1

2

3

4

5

6

7

8              **UNITED STATES DISTRICT COURT**

9              **EASTERN DISTRICT OF CALIFORNIA**

10

11   GERRY WILLIAMS,                    )   Case No.: 1:11-cv-00874-BAM (PC)
                                         )
12               Plaintiff,             )   ORDER GRANTING IN PART AND DENYING IN
                                         )   PART DEFENDANTS' MOTION FOR
13         v.                            )   SUMMARY JUDGMENT
                                         )   (ECF No. 57)
14   J. RONQUILLO, et al.,               )
                                         )
15               Defendants.            )
                                         )
16                                       )
                                         )
17   _____ )

18   **I.      Introduction**

19         Plaintiff Gerry Williams ("Plaintiff") is a state prisoner proceeding pro se in this civil rights

20   action pursuant to 42 U.S.C. § 1983.  This action proceeds on Plaintiff's complaint against Defendants

21   Ronquillo, Rielo and Anderson ("Defendants") for excessive force in violation of the Eighth

22   Amendment.

23         On June 4, 2013, Defendants filed the instant motion for summary judgment, arguing that

24   Defendant Rielo used no force against Plaintiff and that the amount of force used by Defendants

25   Ronquillo and Anderson was *de minimis* and caused no harm.[1]  (ECF No. 35.)  Plaintiff opposed the

26

27   ─────────────────────
     [1]      Concurrent with the motion, Plaintiff was provided with notice of the requirements for opposing a motion for
28   summary judgment.  (ECF No. 35-1); see Woods v. Carey, 684 F.3d 934 (9th Cir. 2012); Rand v. Rowland, 154 F.3d 952,
     957 (9th Cir. 1988); Klingele v. Eikenberry, 849 F.2d 409, 411-12 (9th Cir. 1988).

1   motion on December 26, 2013.  (ECF No. 52.)  Defendants replied on January 21, 2014.  (ECF No.

2   57.)  The motion is deemed submitted.  Local Rule 230(l).

3          **II.      Legal Standard for Summary Judgment**

4          Pursuant to Federal Rule of Civil Procedure 56(a) summary judgment is appropriate when the

5   movant shows that there is no genuine dispute as to any material fact and the movant is entitled to

6   judgment as a matter of law.  Summary judgment must be entered, "after adequate time for discovery

7   and upon motion, against a party who fails to make a showing sufficient to establish the existence of

8   an element essential to that party's case, and on which that party will bear the burden of proof at trial."

9   Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  However, the court is to liberally construe the

10  filings and motions of pro se litigants.  Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010).  The

11  "party seeking summary judgment always bears the initial responsibility of informing the district court

12  of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to

13  interrogatories, and admissions on file, together with the affidavits, if any, which it believes

14  demonstrate the absence of a genuine issue of material fact."  Celotex, 477 U.S. at 323 (internal

15  quotations and citations omitted).

16         If the moving party meets its initial responsibility, the burden then shifts to the opposing party

17  to establish that a genuine issue as to any material fact actually does exist.  Matsushita Elec. Indus. Co.

18  v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the existence of this

19  factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to

20  tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in

21  support of its contention that the dispute exists.  Fed. R. Civ. P. 56(c); Matsushita, 475 U.S. at 586

22  n.11.

23         The parties bear the burden of supporting their motions and oppositions with the papers they

24  wish the Court to consider and/or by specifically referencing any other portions of the record for

25  consideration.  Carmen v. San Francisco Unified School Dist., 237 F.3d 1026, 1031 (9th Cir. 2001).

26  The Court will not undertake to scour the record for triable issues of fact.  Simmons v. Navajo County,

27  Arizona, 609 F.3d 1011, 1017 (9th Cir. 2010).

28

2

In arriving at this order, the Court carefully reviewed and considered all arguments, points and authorities, declarations, exhibits, statements of undisputed facts and responses thereto, if any, objections, and other papers filed by the parties. Omission of reference to an argument, document, paper, or objection is not to be construed to the effect that this Court did not consider the argument, document, paper, or objection. This Court thoroughly reviewed and considered the evidence it deemed admissible, material, and appropriate.

**A.     Summary of Relevant Allegations in Plaintiff's Complaint**

Plaintiff alleges as follows: On January 27, 2010, at Kern Valley State Prison, Plaintiff attempted to explain to Defendants Ronquillo and Rielo that Facility B3, B-section was always the section that gets cheated out of their dayroom and telephone program. Defendant Ronquillo became angry and twisted Plaintiff's already injured arm behind his back to handcuff him. Plaintiff tried to explain to Defendants Ronquillo and Rielo that he had an injured right arm and a waist restraint chrono to be cuffed in the front or by waist restraints. Defendant Ronquillo paid no attention to Plaintiff's complaint, continued twisting Plaintiff's arm behind his back and placed the handcuffs on his wrist. Defendant Rielo pulled out his can of pepper spray and told Plaintiff if he did not put his hands behind his back, then he would be pepper sprayed. Defendants Ronquillo and Rielo already knew that Plaintiff had previously injured his right arm because they had seen him wearing an arm sling.

Plaintiff further alleges that while wearing an arm sling, Defendants Ronquillo and Rielo twisted his arm behind his back and placed their handcuffs on him. As Defendants Ronquillo and Rielo were twisting Plaintiff's arm, the control booth officer pressed his alarm. About ten officers then came into the housing unit, including Defendant Anderson. Defendant Anderson grabbed Plaintiff and threw him against the wall. At that point, Plaintiff explained to Defendant Anderson that he had an injured right arm. Defendant Anderson paid no attention and escorted Plaintiff to the Program Office. During the escort, Defendant Anderson subjected Plaintiff to a procedure called a "Duckwalk" in which correctional officer raise the prisoner's handcuffed arm up as high as possible to make the prisoner bend over to the point where the prisoner's head almost touches his knees. Defendant Anderson made Plaintiff "Duckwalk" all the way to the Program Office while injuring

Plaintiff's already injured right arm.  Plaintiff attempted to explain to Defendant Anderson that he had an injured right arm, but Defendant Anderson paid no attention and continued to "Duckwalk" Plaintiff.

Once at the Program Office, Defendant Anderson pushed Plaintiff against the wall and told Plaintiff to spread his legs.  Defendant Anderson kicked Plaintiff's left foot, which made Plaintiff spread his legs to the point of almost doing a split on the floor.  Defendant Anderson then kneed Plaintiff in the lower back with his right knee and injured Plaintiff's lower back.

**B.      Statement of Undisputed Material Facts ("UMF")**

1.      At all times relevant to this action, Plaintiff was in the custody of the California Department of Corrections and Rehabilitation (CDCR) as a prisoner at Kern Valley State Prison (KVSP), in Delano, California. (Defs' Ex. A, Pl.'s Dep. 10:8-14.)

2.      At all times relevant to this action, Defendants Anderson, Ronquillo and Rielo were employed by CDCR at KVSP as correctional officers. (Compl. p. 2, ECF No. 1.)

3.      On January 27, 2010, Plaintiff approached Defendants Rielo and Ronquillo to question them about why his unit was not receiving dayroom and telephone privileges.  (Compl. p. 5, ECF No. 1; Ex. A, Pl's Dep. 10:15-21.)  When Defendants told Plaintiff to go to lock up, he resisted and responded by arguing with Defendant Ronquillo about the program and stated, "I just want to know why we're not getting program." (Ex. A, Pl.'s Dep. 10:15-25; 32:1-6.)

Plaintiff partially denies this statement of fact, contending that when he asked for an explanation, Defendant Ronquillo grabbed his hand and twisted it behind his back.  (ECF No. 52, p. 25; Plaintiff's Affidavit ¶ 7.)  Plaintiff's statement does not raise a genuine factual dispute.  Plaintiff admits that after being told to go lock up he instead "asked for an explanation." (ECF No. 52, p. 25; Plaintiff's Affidavit ¶¶ 4, 6.)

4.      On January 27, 2010, Defendant Ronquillo attempted to handcuff Plaintiff and Plaintiff resisted. (Ex. A, Pl.'s Dep. 11:6-12). While Defendant Ronquillo was handcuffing Plaintiff, Plaintiff stiffened his right arm, causing the sling to fall off his shoulder. (Defs' Ex. A, Pl.'s Dep. 32:7-12.)

Plaintiff contends that Defendants' evidence does not show that Plaintiff caused his arm sling to fall off.  According to Plaintiff's deposition testimony, however, Plaintiff "stiffened up" his right

1    arm and "the arm sling fell."  (Defs' Ex. A., Pl's Dep. 32:7-12.)  Plaintiff does not cite any admissible

2    evidence to raise a genuine dispute of fact.

3         5.    On January 27, 2010, Defendant Rielo told Plaintiff that if he did not place his hands

4    behind his back, Defendant Rielo would spray him with pepper spray. (Ex. A, Pl.'s Dep. 14:12-17.) In

5    response to Defendant Rielo's threat of using pepper spray, Plaintiff put his "already injured arm

6    behind his back." (Defs' Ex. A, Pl.'s Dep. 11:6-12.)

7         Plaintiff attempts to raise a genuine dispute by citing his deposition testimony that Defendant

8    Ronquillo "just kept on twisting until he twisted my arm behind my back."  (ECF No. 52, p. 26, Defs'

9    Ex. A, Pl.'s Dep. 11:6-7.)  However, Plaintiff continued to testify as follows:

10         "I wouldn't let him twist it behind my back without refusing that much . . . Then Reilo
           pulled his pepper spray out and put it in my face and told me if I don't put my hands
11         behind my back, he was going to spray me.  So I had no choice but to put my already
           injured arm behind my back."
12

13   (Defs' Ex. A, Pl.'s Dep. 11:7-12.)  Plaintiff has not raised a genuine dispute.  Plaintiff's cited

14   only a portion of his testimony, omitting reference to his further testimony that he resisted

15   Defendant Ronquillo and then placed his arm behind his back in response to Defendant Rielo's

16   order.

17        6.    On January 27, 2010, Defendant Ronquillo handcuffed Plaintiff's hands behind his

18   back. (Defs' Ex. A, Pl.'s Dep. 14:8-11.)

19        7.    During the incident with Defendant Ronquillo, Plaintiff told Defendant Ronquillo he

20   had a waist restraint chrono, but never showed it to him. (Defs' Ex. A, Pl.'s Dep. 12:10-17.)

21        8.    Plaintiff believes that he had a waist restraint for 5 years and that it was renewed

22   sometime around 2009. (Defs' Ex. A, Pl.'s Dep. 12:22 -13:14.)  Plaintiff was issued temporary

23   chronos in May 2009 for his shoulder. (ECF Nos. 35-5, 35-6; Declaration of Elise Owens Thorn

24   ("Thorn Dec."), Ex. C-6 and C-7.)

25        Plaintiff claims he was issued new waist restraint chronos in 2009 and new arm sling chronos.

26   (Defs' Ex. A, Pl.'s Dep. 12:18-13:1-24.)  This does not raise a genuine dispute of material fact.

27        9.    On January 27, 2010, Plaintiff was wearing an arm sling based on an expired chrono.

28   (Defs' Ex. A, Pl.'s Dep. 13:16-24; Thorn Dec., Ex. C-7.)

Plaintiff attempts to raise a genuine dispute, claiming he was issued an arm sling chrono on 6/4/09, which was good for six months.  (Thorn Dec., Ex. C-7.)  This assertion does not raise a triable issue of fact.  The 6/4/09 chrono expired on 12/4/09, which was more than one month prior to the incident at issue.

10.    On January 27, 2010, Defendant Rielo's interaction with Plaintiff was all verbal. He did not pepper-spray Plaintiff, put his hands on Plaintiff or use any force against Plaintiff.  (Defs' Ex. A, Pl.'s Dep. 14:20 -15:9.)

11.    After Defendant Ronquillo handcuffed Plaintiff, he guided Plaintiff over to the window at the Program Office without use of any force.  (Defs' Ex. A, Pl.'s Dep. 15:10-17 and 16:3-5.)  While at the window, Plaintiff did not keep his head facing the window, but turned sideways, attempting to get the officer's attention.  (Defs' Ex. A, Pl.'s Dep. 18:7-15.)

12.    Defendant Anderson took over from Defendant Ronquillo to move Plaintiff to the program office. Defendant Ronquillo told the responding officers, including Anderson, that Plaintiff was resisting.  (Defs' Ex. A, Pl.'s Dep. 16:13-25.)

13.    Defendant Anderson held Plaintiff against the window with his hands on the handcuffs, leaning against Plaintiff with his body weight and elbow against Plaintiff's upper back. (Defs.' Ex. A, Pl.'s Dep. 21:7-13.)

14.    Defendant Anderson escorted Plaintiff to the Program Office using a "duck walk" technique, where the officer pulls up on the handcuffs, which forces the inmate's head down.  (Defs' Ex. A, Pl.'s Dep. 20:4-19.)

15.    Once Defendant Anderson got Plaintiff to the Program Office, he placed Plaintiff against the wall and told him to spread his legs. Defendant Anderson kicked Plaintiff's left leg to force him to spread his legs further apart. (Defs' Ex. A, Pl.'s Dep. 21:19-22:2.)  He then kneed Plaintiff in the lower back and pushed on his back real hard with his knee. (Defs' Ex. A, Pl.'s Dep. 22:4-16.) While he had Plaintiff against the wall, Defendant Anderson placed Plaintiff's arm sling over his shoulder.  (Defs' Ex. A, Pl.'s Dep. 32:23-33:7.)

16.     Defendant Anderson held Plaintiff against the wall for a minute and then placed Plaintiff in a holding tank, without any use of force, at Sergeant Jones' instructions.  (Defs' Ex. A, Pl.'s Dep. 22:17-24.)

17.     On January 27, 2010, Sergeant M. Jones instructed Defendant Anderson to place Plaintiff in a holding cell and interviewed Plaintiff immediately thereafter.  During the interview, Inmate Williams did not appear to be in any pain.  (ECF No. 35-5; Defs' Ex. D, Declaration of M. Jones ("M. Jones Dec.") ¶ 6.)

18.     On January 28, 2010, the day following the incident, Sergeant Jones interviewed Plaintiff a second time. Plaintiff did complain about being handcuffed behind his back and claimed to have a chrono for waist chains. (M. Jones Dec. ¶ 8.)

19.     Following the interview on January 28, 2010, Sergeant Jones inventoried Plaintiff's property and did not find a current chrono for waist chains. The only chrono Plaintiff had was expired. Also, according to KVSP's records, Plaintiff was not listed as requiring any reasonable accommodations.  (M. Jones Dec. ¶ 9.)

Plaintiff claims he had an arm sling chrono on June 4, 2009, which was good for six months, and he was issued another waist restraint chrono on Feb. 2, 2010.  (ECF No. 52, p. 31; Defs' Ex. C-7, C-20-22.)  As neither chrono was in effect on January 27, 2010, Plaintiff has not raised a genuine dispute of material fact.

20.     On December 3, 2012, Defendants served Plaintiff with a First Amended Notice of Taking Plaintiff's Deposition via Videoconference with Production of Documents. Defendants requested that Plaintiff produce the following documents for inspection and copying at the deposition: (1) all documents in Plaintiff's possession or control which in any way relate to the subject matter of this lawsuit; and (2) all documents in Plaintiff's possession which he intends to use at trial. (ECF No. 35-5; Defs' Ex. B.)

21.     At his deposition, Plaintiff acknowledged that the only documents responsive to Defendant's request are those attached as Exhibit "A" to his request for admissions to Defendant Ronquillo.  (Defs' Ex. A, Pl.'s Dep. 42:3-12; 43:8-15.)

1

### III.    Discussion

2       Plaintiff claims that Defendants used excessive force in violation of the Eighth Amendment on

3    January 27, 2010.  The relevant inquiry for this claim is "whether force was applied in a good-faith

4    effort to maintain or restore discipline, or maliciously and sadistically to cause harm."  Hudson v.

5    McMillian, 503 U.S. 1, 6-7, 112 S. Ct. 995, 998 (1992); Whitley v. Albers, 475 U.S. 312, 320, 106 S.

6    Ct. 1078, 1085 (1986).  In making this determination, the court may evaluate "the need for the

7    application of force, the relationship between the need and the amount of force that was used, [and]

8    the extent of injury inflicted." Whitley, 475 U.S. at 321, 106 S. Ct. at 1085; Marquez v. Gutierrez, 322

9    F.3d 689, 692 (9th Cir. 2003).

10      However, "not every malevolent touch by a prison guard gives rise to a federal cause of

11   action."  Wilkins v. Gaddy, 559 U.S. 34, 37, 130 S.Ct. 1175, 1178 (2010) (quoting Hudson, 503 U.S.

12   at 9, 112 S. Ct. at 1000).  The Eighth Amendment's prohibition of cruel and unusual punishments

13   "necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that

14   the use of force is not of a sort repugnant to the conscience of mankind." Id. at 37-38.  "An inmate

15   who complains of a push or shove that causes no discernible injury almost certainly fails to state a

16   valid excessive force claim." Id. at 38.

17      Defendant Rielo

18      The undisputed facts demonstrate that Defendant Rielo did not use any force, much less

19   excessive force, on Plaintiff during the January 27, 2010 incident.  (UMF 10.)  In his opposition

20   papers, Plaintiff admits that Defendant Rielo did not physically put his hands on Plaintiff or pepper

21   spray Plaintiff.  (ECF No. 52, p. 15.)  Defendant Rielo is entitled to summary judgment on Plaintiff's

22   claim of excessive force.

23      The Court notes that Plaintiff now argues Defendant Rielo violated his constitutional rights by

24   condoning the use of excessive force by Defendant Ronquillo.  (ECF No. 52, pp. 15-16.)  This was not

25   the basis of Plaintiff's original claim against Defendant Rielo.  Rather, in the operative complaint,

26   Plaintiff alleged that Defendant Rielo utilized excessive force in violation of Plaintiff's Eighth

27   Amendment rights when "Defendant R.M.Rielo twisted [Plaintiff's] arm behind his back."  (ECF No.

28   1, p. 5.)  Nonetheless, as discussed below, the Court finds that Defendant Ronquillo did not use

excessive force on January 27, 2010.  Therefore, Defendant Rielo cannot be liable for condoning any use of excessive force.  Accordingly, summary judgment shall be granted in favor of Defendant Rielo.

Defendant Ronquillo

Here, it is undisputed that Plaintiff disobeyed a lawful order from Defendant Ronquillo to lock up, which resulted in Defendant Ronquillo placing Plaintiff in handcuffs.  (UMF 3.)  It also is undisputed that Plaintiff resisted being placed in handcuffs and stiffened his arm.  (UMF 4.)  Although Plaintiff claims that there was no need to use any force because there was no "prison disturbance," correctional officers may be required to use some measure of force when an inmate, such as Plaintiff, refuses a valid order.  Whitley, 475 U.S. at 320.  Plaintiff's refusal to "lock up" and continued resistance justified Defendant Ronquillo's use of handcuffs in a "good faith effort to maintain or restore discipline."  Hudson, 503 U.S. at 4-5.

To the extent Plaintiff claims that the use of force was excessive because he had waist chain and arm sling chronos, his claim is unsupported.  The undisputed evidence establishes that Plaintiff did not have a valid waist chain chrono or a valid arm sling chrono at the time of the incident.  (UMF 9, 19.)  The evidence also establishes that Plaintiff himself placed his arm behind his back in response to Defendant Rielo's threatened use of pepper spray and that Defendant Ronquillo did nothing more than handcuff Plaintiff.  (UMF 5, 6, 11.)  Given this evidence, no reasonable jury could conclude that Defendant Ronquillo's handcuffing of Plaintiff constituted excessive force.  Instead, the application of handcuffs by Defendant Ronquillo, without more, amounts to a de minimis use force.  See, e.g., West v. Oromde, 2011 WL 4056035, *5 (E.D. Cal. Sept. 12, 2011) (use of handcuffs on prisoner constituted de minimis use of force); see also Wilkins, 559 U.S. at 38; Hudson, 503 U.S. at 9; cf. Orr v. Hernandez, 2009 WL 2171078, *6 (E.D. Cal. 2009 WL 2171078 (E.D. Cal. Jul. 20, 2009) ("The Ninth has recognized a valid excessive force claim based upon overly tight handcuffs, although cases where tight handcuffing was found to constitute excessive force, the plaintiff was in visible pain, repeatedly asked the defendant to remove or loosen the handcuffs, had pre-existing injuries known to the defendant, or alleged other forms of abusive conduct by the defendant."); Smith v. Yarborough, 2008 WL 4877464, *12 and n. 3 (C.D. Cal. Nov. 7, 2008) (discussing cases in which tight handcuffing coupled with other factors, such as a pre-existing condition, constituted excessive force).

1    Moreover, the Court finds that even if Plaintiff had valid chronos and an existing right arm

2    injury, the use of force was justified by Plaintiff's failure to comply with Defendant Ronquillo's order.

3    See, e.g., Jones v. Bishop, 2012 WL 1378518, *3 (E.D. Cal. Apr. 19, 2012) (use of handcuffs that

4    resulted in bruising and scrapes to wrist following failure to comply with order did not amount to

5    excessive force); Chatman v. Johnson, 2008 WL 4177730, *13 (E.D. Cal. Sept. 8, 2008) (handcuffing

6    of prisoner with medical authorization for waist chains after prisoner refused a direct order to return to

7    his cell did not amount to excessive force, even if it aggravated a medical condition), findings and

8    recommendations adopted in full by Chatman v. Johnson, 2008 WL 4462980, *1 (E.D. Cal. Sept. 30,

9    2008).

10    For these reasons, the Court finds that the use of handcuffs in this instance does not rise to the

11    level of a constitutional violation.  Accordingly, summary judgment shall be granted in favor of

12    Defendant Ronquillo.

13    Defendant Anderson

14    Plaintiff complains of the actions taken by Defendant Anderson during the escort to and

15    placement in the Program Office.  According to the undisputed evidence, Defendant Ronquillo

16    notified all responding correctional officers, including Defendant Anderson, that Plaintiff was

17    resisting.  (UMF 12.)  Following this notification, Defendant Anderson leaned against Plaintiff with

18    his body weight and elbow against Plaintiff's upper back, "duck walked" Plaintiff to the Program

19    Office, kicked Plaintiff's left leg to force him to spread his legs further apart and then kneed Plaintiff

20    in the lower back and pushed on his back real hard with his knee.  (UMF 13, 14, 15.)  Defendants

21    contend that Defendant Anderson's methods of escorting Plaintiff should be considered a de minimis

22    use of force, applied in a good faith effort to maintain or restore discipline.  (ECF No. 35-2, p. 10.)

23    Contrary to Defendants' assertion, however, there is no evidence that Plaintiff continued to

24    resist after being handcuffed by Defendant Ronquillo.  In other words, there is no indication that

25    Defendant Anderson needed to apply force to gain Plaintiff's compliance with any lawful order.

26    Whitley, 475 U.S. at 321, 106 S. Ct. at 1085.  This lack of evidence regarding the need for force,

27    coupled with Plaintiff's allegations that Defendant Anderson threw Plaintiff into the wall, duck walked

28    Plaintiff so that his head almost touched his knees, kicked his leg into a split and kneed him in the

back, raises a genuine dispute of material fact as to whether Defendant Anderson maliciously and sadistically used force in violation of the Eighth Amendment.  Although Plaintiff's assertion that Defendant Anderson threw him into a wall while at the window conflicts with his deposition testimony,[2] the Court does not make credibility determinations or weigh conflicting evidence at this stage of the proceedings.  Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. Nov. 27, 2007).  Instead, the Court must draw all inferences in the light most favorable to the non-moving party.  Id.  In this instance, a jury might find Plaintiff credible and adopt his version of events.  The Court therefore finds that Defendant Anderson is not entitled to summary judgment.

**IV.     Conclusion and Order**

For the reasons discussed above, Defendants' motion for summary judgment, filed on June 4, 2013, is GRANTED IN PART and DENIED IN PART as follows:

1.     Defendants' motion for summary judgment in favor of Defendants Rielo and Ronquillo is GRANTED;

2.     Defendants' motion for summary judgment in favor of Defendant Anderson is DENIED; and

3.     The Clerk of the Court is directed to enter judgment in favor only of Defendants Rielo and Ronquillo.

IT IS SO ORDERED.

Dated:   **March 31, 2014**          /s/ *Barbara A. McAuliffe*
                                      UNITED STATES MAGISTRATE JUDGE

---

[2]      Plaintiff testified under oath that Defendant Anderson did not use any force against him while at the window. (Defs' Ex. A, Pl.'s Dep. 21:7-13.)